UNITED STATES OF AMERICA,

        Plaintiff,

                                 Case No. 26-cr-0094-bhl-1

    v.

SAMUEL STAIR,

        Defendant.

## DECISION AND ORDER

Defendant Samuel Stair moves for revocation of a magistrate judge's ruling that he be detained pending trial on eleven drug-related charges. (ECF No. 104.) Under 18 U.S.C. §3145(b), this Court reviews the magistrate judge's detention ruling independently, *see United States v. Wilks*, 15 F.4th 842, 847 (7th Cir 2021), and, in conducting that review, may either "start from scratch" with a new hearing or evaluate the record of the proceedings before the magistrate judge. *See United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991). The Court took the former approach and, on May 20, 2026, held a hearing at which both parties proffered evidence and argued their respective positions on Stair's detention. At the hearing's conclusion, the Court took the matter under advisement. Having reviewed the record and the parties' arguments, the Court will grant Stair's motion and order him released on a personal recognizance bond with the conditions recommended by Pretrial Services and the defense. If either party wishes to alter those conditions, they may request modifications by formal motion. If Stair violates any of those conditions, the government may promptly initiate revocation proceedings to return him to custody.

## PROCEDURAL HISTORY

On April 21, 2026, the government filed a criminal complaint against Stair and 17 co-defendants. The complaint alleges Stair's participation in a large drug conspiracy, encompassing three underlying Drug Trafficking Organizations (DTOs). (ECF No. 1.) He and his co-defendants are also charged with related money laundering and drug offenses. (*Id*.) Stair is alleged to have used his substantial residential rental business to lease houses and apartments to known drug

dealers to facilitate their drug trafficking.  (*Id*.)  The complaint further alleges that Stair not only profited from renting to the drug dealers, whom he believed to be a dependable source of income, but also relied upon them for security and for help in evicting tenants.  (*Id*. ¶17.)

The day after the complaint was filed, Stair was arrested and made his initial appearance before the magistrate judge.  He was advised of his rights and temporarily ordered into custody pending an April 27, 2026 detention hearing.  In advance of the detention hearing, Pretrial Services interviewed Stair and prepared a bond study.  (ECF No. 70.)  The bond study found no known factors indicating Stair was a risk of nonappearance.  (*Id*. at 3.)  In assessing his potential danger to the community, Pretrial Services highlighted the nature of the charged offenses, Stair's substance abuse history, and his association with individuals alleged to have committed crimes.  (*Id*.)  Pretrial Services recommended that Stair be released on bond subject to a series of conditions, including house arrest and location monitoring.  (*Id*.)

At the April 27, 2026 hearing, the magistrate judge disagreed with Pretrial Services' bond recommendation and ordered Stair detained.  The magistrate judge first correctly noted that Stair was subject to a rebuttable presumption of detention under 18 U.S.C. §3142(e)(3)(A) given his indictment for conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. §841(b)(1)(B), §841(b)(1)(C), §846, and 18 U.S.C. §2(a). (ECF No. 77 at 2.) The magistrate judge concluded that Stair had rebutted the presumption, but nevertheless ordered him detained, finding that the government had shown by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community.  (*Id.* at 2–3.)  Accordingly, Stair's preliminary detention continued.

The government obtained and filed an indictment against Stair and his co-defendants the following week, on May 5, 2026.  The 35-count indictment charges Stair with eleven federal offenses, including three counts of Conspiracy to Distribute Controlled Substances based on his alleged relationships with three separate DTOs; a single count of Conspiracy to Maintain a Drug House; four counts of Maintaining a Drug House; one count of Conspiracy to engage in Money Laundering; and two counts of Money Laundering.  (ECF No. 102.)  Stair was arraigned and entered not guilty pleas on all charges on May 7, 2026, and his detention was continued as previously set.  (ECF No. 116.)

The day before the arraignment, May 6, 2026, Stair filed a Motion for Revocation of Magistrate Judge's Detention Order Pursuant to 18 U.S.C. §3145(b).  (ECF No. 104.)  The Court

immediately set a briefing schedule and scheduled a detention hearing for May 20, 2026. (ECF No. 118.) The parties submitted further briefing on May 15 and 18, 2026. (ECF Nos. 150 & 165.)

At the May 20 hearing, the parties agreed to proceed by proffer rather than testimony and presented arguments for and against detention. The defense did not contest that Stair is subject to the presumption of detention under 18 U.S.C. §3142(e)(3)(A), given the charges against him. The government acknowledged it was focusing on Stair's potential danger to the community and not pursuing detention on flight risk grounds. The Court encouraged the parties to focus their arguments on the specific allegations against Stair, the strength of the evidence against him, his own personal history and characteristics, and why they believed the proposed conditions of release would or would not reasonably assure the safety of the community. The government emphasized the serious nature of the drug charges alleged in the indictment and the danger to the community resulting from the charged conduct. The defense argued that the government had failed to provide clear and convincing evidence showing Stair could not be released on bond without risking the community's safety, given the restrictive conditions, including home detention and GPS monitoring, the Court could impose. The Court took the matter under advisement.

## LEGAL STANDARD

The Bail Reform Act provides that a defendant charged with a criminal offense may be released on personal recognizance, released on conditions, temporarily detained, or detained. 18 U.S.C. §3142(a). Given the presumption of innocence, detention prior to conviction is *not* supposed to be the default. Instead, a court should order a defendant detained only if it finds there are no conditions or combination of conditions of release on bond that will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. §3142(e)(1). Under Section 3142(f), a court makes this determination after a hearing at which the government bears the burden of proving the need for detention. 18 U.S.C. §3142(f)(2)(A)–(B). If detention is ordered based on the defendant's dangerousness, the government must show this by clear and convincing evidence. If detention is ordered because of the defendant's flight risk, the burden is lower, requiring only a preponderance of the evidence. *See United States v. Portes*, 786 F.2d 758, 764–65 (7th Cir. 1985).

## ANALYSIS

In determining whether a defendant can be released on bond without unreasonably endangering the community, the Court considers the factors listed in 18 U.S.C. §3142(g). These

considerations include the nature and circumstances of the offenses charged, including whether the offense involves a controlled substance, firearm, explosive, or destructive device; the weight of the evidence against the defendant; the history and characteristics of the defendant; and the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. §3142(g). Congress has also provided that defendants facing certain serious crimes, including those charged with a criminal offense under the Controlled Substances Act, 21 U.S.C. §§801–904, for which the maximum term of imprisonment is 10 years or more, should be subject to a rebuttable presumption that no conditions of bond will reasonably assure their appearance and the safety of the community. 18 U.S.C. §3142(e)(3)(A). This presumption shifts the burden of production to the defendant to come forward with some evidence that if released he will not flee or endanger the community. *Portes*, 786 F.2d at 764. The defendant's burden in this situation is not heavy; any favorable evidence within one of the §3142(g) categories can suffice. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). Even when the presumption is rebutted, however, it does not disappear. It remains in the case as an evidentiary finding militating against release. *See id.*

The government argues for detention based primarily on the serious charges against Stair as alleged in the Indictment and its perception of the strength of the evidence supporting those charges. It also relies upon the presumption of detention that Stair concedes applies to him based on the nature of those charges. The defense insists the government has failed to carry its burden of showing detention is appropriate by clear and convincing evidence. It points to Pretrial Services' bond recommendation and insists the available restrictions, including home detention with GPS monitoring, subjecting the defendant's devices and communications to monitoring and search by Pretrial Services, prohibiting all contact with co-defendants, and relinquishing his passport are sufficient to reasonably protect the public. The Court agrees with the defense that the government has not carried its burden by clear and convincing evidence.

With respect to the seriousness of the charges against him, the grand jury found probable cause to charge Stair with eleven separate counts of criminal conduct, including three counts of conspiring to possess with intent to distribute controlled substances, as well as maintaining a drug house and money laundering. The gist of the government's case is that Stair knowingly rented properties to drug traffickers, profited from doing so, and used known drug traffickers to threaten

and evict tenants and vagrants from his rental properties. These are unquestionably serious offenses.

Notably, however, while trafficking controlled substances is both serious and dangerous, Stair's role in the alleged conspiracy is somewhat unique. Under the government's theory, Stair's primary role was serving as a landlord who sought out and rented apartments to drug dealers both for a rental profit and to obtain their assistance in forcefully evicting his other tenants. At argument, the government conceded that Stair does not appear to have sold any narcotics himself. Nor did he source controlled substances for resale by other conspiracy members. The government contends there is evidence from a confidential source that one of his codefendants asked Stair to finance the purchase of kilo-quantities of controlled substances on one occasion several years ago. (*See* ECF No. 1 (Criminal Complaint) at 34, ¶66 ("CS#2 detailed that approximately 4 years ago, CS#2 witnessed [a codefendant] asking STAIR for between $20,000 to $30,000 to purchase a kilogram of cocaine. CS#2 stated STAIR was known to use cocaine recreationally, but this was the first time CS#2 knew of STAIR financing drug dealing.").) This single instance is the only suggestion in the record that Stair had any direct involvement in procuring and reselling drugs. It is dated and the government proffers no evidence that Stair complied with the request and bankrolled the alleged drug dealing. The government also proffers evidence that Stair may have purchased controlled substances for his own and his wife's personal use. Accordingly, even accepting the government's proffer, Stair's role in the alleged conspiracy was unique and unlike that of the other defendants in this case and most defendants in other drug trafficking conspiracies.

The Court must also account for the weight of the evidence against the defendant. 18 U.S.C. §3142(g)(2). The parties offer competing legal arguments about how the Court should handle this factor. The defense cites Ninth Circuit caselaw suggesting this factor is the least significant given that the defendant is presumed innocent. (ECF No. 104 at 3 (citing *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985)).) The government cites other cases, including a district court case from the Northern District of Illinois, rejecting that notion. *See United States v. Calabrese*, 436 F. Supp. 2d 925, 927 (N.D. Ill. 2006). In the end, the Court need not adopt either position; the strength of the evidence of Stair's involvement in the alleged criminal conduct is plainly relevant and must be weighed along with the other factors identified in Section 3142(g). Assigning one factor more weight than others in the abstract is unnecessary. In deciding whether Stair should be detained, the Court looks at all relevant factors and gives them their appropriate

weight based on the totality of the circumstances in each case.  18 U.S.C. §3142(g); *see also Dominguez,* 783 F.2d at 707 (noting that a rebutted presumption remains in the case "as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in §3142(g))"; *Wilkes*, 15 F.4th at 846 ("the judge must consider the factors listed in 18 U.S.C. §3142(g), which include (among other things) the nature of the charged offense, the defendant's history and characteristics, and the risk to the public.")  This is not a mathematical exercise.

The government highlights evidence from wiretaps showing Stair knowingly and intentionally leased rental units to persons he knew to be trafficking drugs.  It also proffers recordings of phone calls in which violence or threats of violence are discussed in connection with removing tenants from his properties.  The government further cites recordings of jail calls, in which it contends Stair was attempting to obstruct justice by providing money to some of his co-defendants and giving his wife directions for continuing his rental business while he was incarcerated.  The government also insists that it has evidence Stair has used other inmates' PIN numbers to place his own jail calls, presumably to interfere with any efforts to eavesdrop on his jail communications with the outside world.  The defense strongly disputes the government's characterization of many of these calls.  Defense counsel notes that Stair was not a party to the wiretapped call in which persons were alleged to have been directed to use violence and baseball bats to evict tenants and characterizes as hyperbole some of the language Stair used concerning the use of force for evictions.  The defense pushes back strongly on the government's accusations that Stair demonstrated his dangerousness by speaking with his wife while incarcerated, noting that he obviously needed to do so given the size of his rental business and his inability to attend to matters himself while detained.  Finally, the defense highlights the fact that Stair retains the presumption of innocence.  In the end, the government's evidence is strongest that Stair intentionally rented properties to tenants whom he knew intended to use them for drug dealing.  If proven, this is a federal felony.  The evidence of additional wrongdoing is less clear or convincing.

The Court must next consider the defendant's own personal history and characteristics. The defense proffered evidence that Stair is married and has long and well-established connections to the district.  He has lived in Hales Corners, Wisconsin since 2003.  He is a college graduate, an I.T. professional and has a long history of employment.  He runs a substantial residential real estate business that includes more than 1500 rental units.  Stair's criminal history is minimal.  He was

convicted on a drug possession charge more than 30 years ago, when he was eighteen years old and a college freshman. The government concedes that Stair lacks a significant criminal record but argues that his record does not reflect his actual criminal involvement, as alleged in the Indictment. According to the prosecution, Stair's lack of criminal convictions supports his detention because it shows that he has participated in a dangerous drug conspiracy while evading detection and using his rental business as a front. Nothing in Stair's personal circumstances and criminal history clearly and convincingly supports a finding that he is particularly dangerous, especially compared to the other defendants in this case and most defendants charged in connection with drug trafficking.

The final Section 3142(g) factor concerns the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. §3142(g)(4). To weigh this factor, the Court must first determine what prospective danger Stair poses to the community if released on bond. *See United States v. Thomas*, No. 18-cr-47-pp, 2018 WL 4078400 at *4–5 (E.D. Wis. Aug. 27, 2018). At the hearing, the government had difficulty articulating the specific dangers it believed Stair would pose if released on bond. It also made little effort to explain why any dangers he did pose could not be reasonably dealt with by the strict conditions of bond recommended by probation and the defense. Painting with a broad brush, the government largely relies upon the large drug trafficking conspiracies alleged in the complaint and its contention that Stair sat "at the top" of three DTOs. When pressed for specifics, the government ultimately identified two dangers posed by Stair's release.

First, the government contends that Stair might continue his operations if released and resume renting units to drug dealers and using those dealers and their associates for violent evictions. As noted above, the government conceded at the hearing that there is no evidence that Stair actually sold controlled substances, or sourced or obtained controlled substances for any of the alleged drug dealers to whom he rented apartments. The government also agreed that the drug dealers whom Stair is alleged to have previously provided rental units are now indicted and largely incapacitated. It nevertheless expressed concern that Stair might rent units to new drug dealers who could continue selling dangerous controlled substances in the community. The defense disputes that this is a serious danger. Defense counsel observed that a third-party management company, Smart Asset Realty, has taken over management of Stair's 1500 rental units. Counsel

also noted the government's seizure of Stair's business assets, making any risk that he would resume his alleged role in the drug trafficking "fanciful."

Second, the government contends that Stair poses a risk of obstructing justice if released on bond. The government argues that Stair has in fact already been doing so while in custody, by giving co-defendants money while they too are in custody and using other inmate's PIN numbers to place telephone calls in order to circumvent surveillance. The government further contends that Stair's actions show he will not comply with the conditions of bond. It also argues that Stair continued renting to and cooperating with known drug dealers even when he became aware of the government's ongoing investigation, suggesting that he has no respect for the law and remains a danger to the community. Defense counsel strongly disputed that Stair has in the past or continues to obstruct justice. The defense contends that given Stair's lack of criminal history, the substantial bond conditions being proposed, and the complete absence of any evidence Stair has ever been a violent person, his risk of endangering the community is "zero" if released.

In the end, the government's argument for detention is based largely on the seriousness of the charges in the Indictment and its own characterization that Stair was at the top of three dangerous DTOs, distributing dangerous drugs in our community. Beyond this broad contention that defendants involved in drug conspiracies are inherently dangerous, it offered few specifics suggesting Stair himself is dangerous. To the contrary, the government concedes Stair has a minimal and dated criminal record and no history of violent conduct. It also admits it has no evidence that he actually sold drugs or sourced them for others to resell. Nor is there evidence he ever possessed a firearm or other dangerous weapon in connection with these charges or otherwise. While Stair's role in the alleged conspiracies remains a matter for trial, at this stage the government has not proffered clear and convincing evidence that Stair is such a danger to the community that he cannot be released on bond subject to substantial bond conditions. If the Court were to conclude that Stair cannot be released on bond without endangering the community, it is hard to see how any defendant charged in a drug trafficking conspiracy could ever be released on bond. Stair will be subject to very strict conditions and supervision; if he proves unable to comply with those terms, he will promptly find himself back in custody.

## CONCLUSION

The Court concludes that the government has failed to meet its burden by clear and convincing evidence that Stair's release on conditions would pose a danger to any person or the

community.  The offenses with which the government has charged Stair are unquestionably serious and there is strong evidence supporting many of the underlying factual allegations.  In our society, however, a defendant is presumed innocent and liberty is the norm and individuals should not be detained based solely on the nature of the charges against them.  The government has not credibly identified specific dangers posed by Stair's release on bond or explained why the conditions proposed by defense counsel would not assure the safety of the community.  "A defendant cannot be detained as dangerous under §3142(e), even if the presumption is not rebutted, unless a finding is made that no release conditions will reasonably assure the safety of the community." *Dominguez*, 783 F.2d at 706–07 (internal citations omitted).  After a *de novo* review of the entire record, the Court concludes that the government has not demonstrated by clear and convincing evidence that Stair himself, subject to individualized conditions of release, is a danger to the community.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Revocation of Magistrate Judge's Detention Order Pursuant to 18 U.S.C. §3145(b), ECF No. 104, is **GRANTED**.

**IT IS FURTHER ORDERED** that the Magistrate Judge in consultation with Pretrial Services will issue an Order Setting the Conditions of Release.  Those conditions will include the following:

1. The defendant is to be released on home detention enforced by GPS location monitoring, with leave only for verified employment, legal, medical, religious, and other activities as approved by Pretrial Services.
2. The defendant is to surrender his passport and not obtain any new travel documents and his travel is restricted to the Eastern District of Wisconsin.
3. The defendant is to have no contact with any of his co-defendants, alleged victims, or witnesses except through counsel; no use of encrypted or ephemeral messaging; device monitoring/search upon reasonable suspicion by Pretrial Services.
4. The defendant is to have no contact with any alleged drug associated premises or the tenants of said properties as listed in the government's complaint.
5. The defendant is to refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. §802, unless prescribed by a licensed medical practitioner.

6. The defendant shall participate in a program of testing for drug and alcohol abuse as approved by the Pretrial Services Officer. The defendant shall pay costs as directed by Pretrial Services.

7. The defendant is not to possess any firearms or other dangerous weapons and any such weapon is to be removed from his residence prior to release.

Dated at Milwaukee, Wisconsin on May 29, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge